**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HOLLI HAMMARQUIST, RICH FINEMAN, BRIAN NORTON and MICHAEL KISIEL, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) CLASS ACTION COMPLAINT |
| v. | ) ) |
| UNITED CONTINENTAL HOLDINGS, INC. and UNITED AIRLINES, INC., | ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiffs, Holli Hammarquist, Rich Fineman, Brian Norton and Michael Kisiel ("Plaintiffs"), on behalf of themselves and on behalf of a class of similarly situated individuals, complain against Defendants United Continental Holdings, Inc., f/k/a UAL Corporation, and United Airlines, Inc., d/b/a United Airlines (collectively, "Defendants" or "United") as follows:

### I.    INTRODUCTION

1.    Each of the Plaintiffs was a member of either United's Premier Executive or Premier 1K program.  An individual could become a member of one of these programs if they flew a certain number of qualifying miles on United flights each year.  In violation of its agreements with such members, United changed the terms of the Premier Executive and Premier 1K programs in 2012 and reduced the benefits Plaintiffs were entitled to receive.

2.    A customer had to fly at least 50,000 qualifying miles on United flights in a calendar year in order to become a Premier Executive member.  Premier Executive members would be entitled to receive, among other things, double mileage bonuses, priority for upgrades over lower-level members and 72 hour upgrade confirmation.

3.　　A customer had to fly at least 100,000 qualifying miles on United flights in a calendar year in order to become a Premier 1K member. Premier 1K members would be entitled to receive, among other things, upgrade priority over all other lower-levels of membership, even if those other members wanted to purchase or use miles for an upgrade.

4.　　On or about March 3, 2012, United changed its frequent flyer programs and reduced and devalued the benefits for its Premier Executive and Premier 1K members. When it changed the programs, United refused to honor the benefits that Premier Executive and Premier 1K members, its most loyal customers, had already earned in the preceding calendar year, thus breaching its contract with those members.

5.　　Accordingly, Plaintiffs brings this class action against United for breach of contract on behalf of themselves and a nationwide class of similarly situated individuals.

## II.　JURISDICTION AND VENUE

6.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendants. The number of members of all proposed plaintiff classes in the aggregate is greater than 100 and more than two-thirds of the class members reside in states other than the state in which Defendants are citizens.

7.　　This Court has personal jurisdiction over Defendants because (i) Defendants are headquartered in Chicago, Illinois, (ii) Defendants are residents of the State of Illinois, (iii) the events and transactions giving rise to the claims asserted herein occurred in whole or in part in Illinois, (iv) this action arises from Defendants' transaction of business in Illinois, and (v) this action arises from Defendants' making or performance of a contract substantially connected with

Illinois.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), (2) and 1391(c) as Defendants are residents of this judicial district and a substantial part of the events and/or omissions giving rise to the claims occurred or emanated from activities in this judicial district.

### III.     PARTIES

9.     Holli Hammarquist is an individual residing in the State of Ohio.

10.     Rich Fineman is an individual residing in the State of West Virginia.

11.     Brian Norton is an individual residing in the State of Colorado.

12.     Michael Kisiel is an individual residing in the State of Illinois.

13.     United Continental Holdings, Inc. is Delaware corporation with its headquarters and principal place of business located in Chicago, Illinois.   United Continental Holdings, Inc., which was formed after the October 1, 2010 merger between United Airlines and Continental Airlines, now controls and manages the frequent flier program known as MileagePlus.

14.     United Airlines, Inc. is a Delaware corporation with its headquarters located in Chicago, Illinois.   United Airlines, Inc. is a wholly owned subsidiary of United Continental Holdings, Inc.   United Airlines, Inc. created and administered "Mileage Plus."

### IV.     FACTUAL BACKGROUND

15.     In 1981, United began its Mileage Plus program, a customer loyalty program designed to reward frequent fliers.   A customer who enrolled in the program could receive mileage credits for flying on United flights, which could then be redeemed for free, discounted or upgraded travel and non-travel awards.   In addition to flying on United, Mileage Plus members could also accrue mileage credit through authorized credit card purchases or by purchasing products or services from United's non-airline partners, such as retail merchants, hotels and car

rental companies.

16.     Several years later, United offered to its customers three levels of status based upon the number of qualifying miles a customer flew during a calendar year.   The three levels were: (1) Premier; (2) Premier Executive; and (3) Premier 1K.   Per United's representations, each membership level provided a different level of benefits to its members, with Premier Executive receiving more benefits than Premier, and Premier 1K receiving more benefits that Premier Executive.

17.     For example, some of the benefits that United promised to customers who obtained Premier Executive status included double mileage bonuses, priority for upgrades over lower level members and 72 hour advance upgrade confirmation.   One of the additional benefits that United promised to customers who obtained Premier 1K status was priority upgrades over all other membership levels, even if those other members wanted to pay or use miles for an upgrade.

18.     A customer could only become a Premier Executive member, and thus receive the benefits referenced above, if that customer traveled between 50,000 and 99,999 qualifying miles on United flights during a calendar year.   A customer could only become a Premier 1K member, and thus receive the benefits referenced above, if that customer traveled 100,000 or more qualifying miles on United flights during a calendar year.

19.     Unlike general membership in Mileage Plus, United customers could not obtain these qualifying miles through credit card purchases or purchasing products or services from United's "partners."   Rather, United customers could only obtain these qualifying miles by flying at least 50,000 (or in the case of Premier 1K, 100,000) miles on United flights in a calendar year. It would cost thousands or tens of thousands of dollars in airfare in a given year in order to accumulate that many miles and obtain Premier Executive or Premier 1K status.   Furthermore,

since these qualifications were based on the number of miles flown in an entire calendar year, qualifying consumers received their earned benefits throughout the *following* year.

20. United offered the Premier Executive and Premier 1K membership levels, and the attendant benefits, to every customer that belonged to the Mileage Plus program through e-mails, written correspondence, and the representations on its website. Notably, the Mileage Plus membership agreement made no mention of the Premier Executive and Premier 1K programs, nor did it explain any of the terms and conditions of the Premier Executive and Premier 1K programs, which differed from that of the traditional Mileage Plus program. In other words, Plaintiffs and class members were not mere Mileage Plus members, but rather were also Premier Executive and Premier 1K members, which was an offer they accepted separate and apart from the traditional Mileage Plus membership program.[1]

21. The Premier Executive and Premier 1K benefits were not merely gratuities that United could change or modify at any time. Rather, they constituted an offer for a unilateral contract supported by bargained-for consideration, which customers could only accept by flying at least 50,000 (or in the case of Premier 1K, 100,000) miles on United flights in a particular calendar year. Thus, while United may have reserved the right to change the terms of its Premier Executive and Premier 1K programs going forward, it did not have the right to withhold contractual benefits that had already been earned.

22. Accordingly, those customers who became Premier Executive or Premier 1K members by flying at least 50,000 (or in the case of Premier 1K, 100,000) qualifying miles in 2011 were contractually entitled to receive the benefits of those programs throughout 2012.

---

[1] The offer Plaintiffs and other customers accepted to become Premier Executive and Premier 1K members did not incorporate by reference the terms of the Mileage Plus Agreement. Belying any claim to the contrary, United recently changed its MileagePlus Agreement to incorporate the "Premier Programs." That change, however, took place *after* the conduct described herein and was *not* in effect at the time Plaintiffs and other class members accepted the contractual offer in this case.

23.     On or about March 3, 2012, however, United changed its frequent flier program following a merger with Continental Airlines.   The new program was called "MileagePlus" (the same name as United's former frequent flier program, but with no space between the words).   The new program merged the frequent flier programs of United Airlines and Continental Airlines. The membership status levels were also changed.   The former Premier Executive was replaced by two tiers of Premier Gold and Premier Platinum, and the former Premier 1K was replaced by the new Premier 1K.

24.     In addition to name changes, United reduced the benefits to all program levels. For example, individuals who were formerly Premier Executive members had their double mileage bonus reduced to either a 50% mileage bonus (for Premier Gold members) or 75% mileage bonus (for Premier Platinum members).   Former Premier Executive members also no longer received priority upgrades over lower level customers who wanted to purchase or use miles to upgrade.   New Premier Gold members also now had an additional level of customers ahead of them in priority and received only 48 hour advance confirmation of their upgrades as opposed to the 72 hour advance confirmation they were promised.   The new Premier 1K also saw a reduction in benefits, including that they no longer received priority upgrades over lower levels customers who wanted to purchase or use miles to upgrade.

25.     United induced its customers to become Premier Executive and Premier 1K members by promising to provide specifically enumerated benefits in exchange for flying a certain number of miles on United flights in a calendar year.   Even though United reaped millions of dollars from the customers that acted on those representations, United refused to honor its obligations.

26.     For several years, Plaintiff Holli Hammarquist has been a customer of United and a Mileage Plus member.  In 2011, Ms. Hammarquist flew over 50,000 qualifying miles with United, thereby obtaining status as a Premier Executive member and being entitled to the benefits described above throughout 2012.  When United changed its membership status levels and reduced the benefits for Premier Executive members on or about March 3, 2012, United wrongfully denied the bargained-for benefits that Ms. Hammarquist had already earned the preceding year.

27.     For several years, Plaintiff Rich Fineman has been a customer of United and a Mileage Plus member.  In 2011, Mr. Fineman flew over 50,000 qualifying miles with United, thereby obtaining status as a Premier Executive and being entitled to the benefits described above throughout 2012.   When United changed its membership status levels and reduced the benefits for Premier Executive Members on or about March 3, 2012, United wrongfully denied the bargained-for benefits that Mr. Fineman had already earned the preceding year.

28.     For several years, Plaintiff Brian Norton has been a customer of United and a Mileage Plus member.  In 2011, Mr. Norton flew over 100,000 qualifying miles with United, thereby obtaining status as a Premier 1K member and being entitled to the benefits described above throughout 2012.  When United changed its membership status levels and reduced the benefits for Premier 1K Members on or about March 3, 2012, United wrongfully denied the bargained-for benefits that Mr. Norton had already earned the preceding year.

29.     For several years, Plaintiff Michael Kisiel has been a customer of United and a Mileage Plus member.  In 2011, Mr. Kisiel flew over 100,000 qualifying miles with United, thereby obtaining status as a Premier 1K member and being entitled to the benefits described above throughout 2012.  When United changed its membership status levels and reduced the

benefits for Premier 1K Members on or about March 3, 2012, United wrongfully denied the bargained-for benefits that Mr. Kisiel had already earned the preceding year.

## V.  CLASS ACTION ALLEGATIONS

30.     Plaintiffs Holli Hammarquist and Rich Fineman bring Count I on behalf of themselves and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons who reside in the United States who became Premier Executive members by flying 50,000-99,999 qualifying miles with United in 2011 (the "Premier Executive Class").

Excluded from the Premier Executive Class are Defendants, Defendants' officers, directors and employees, and members of their immediate families, and any Judge who may preside over this case and his or her immediate family.

31.     Plaintiffs Brian Norton and Michael Kisiel bring Count II on behalf of himself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons who reside in the United States who became Premier 1K members by flying at least 100,000 qualifying miles with United in 2011 (the "Premier 1K Class").

Excluded from the Premier 1K Class are Defendants, Defendants' officers, directors and employees, and members of their immediate families, and any Judge who may preside over this case and his or her immediate family.

32.     The members of the Premier Executive Class and the Premier 1K Class are so numerous that joinder of all class members is impracticable.   While the exact number and identity of class members cannot be ascertained prior to discovery, there are likely thousands if not tens of thousands of members in each class.   Members of each class can easily be identified through

Defendants' records.

33.     There are questions of law or fact common to the Premier Executive Class and the Premier 1K Class, which predominate over any questions affecting individual class members, including, without limitation:

    (a)  Whether United engaged in the conduct as alleged herein;

    (b)  Whether United's conduct constituted a breach of contract with Plaintiffs and the other members of the Premier Executive Class and the Premier 1K Class; and

    (c)  Whether Plaintiffs and the other members of the Premier Executive Class and Premier 1K Class are entitled to damages and other relief and, if so, in what amounts.

34.     Plaintiffs' claims are typical of the claims of other Premier Executive and Premier 1K Class members' claims because, among other things, they arise under common legal theories and are based on the same conduct that gives rise to the claims of other class members.

35.     Plaintiffs are members of the classes and will fairly and adequately protect the interests of the Premier Executive and Premier 1K Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of other members of the classes.   Plaintiffs are represented by counsel experienced in class action litigation and competent to pursue this action on behalf of the Premier Executive and Premier 1K Classes.

36.     United has acted or refused to act on grounds generally applicable to Plaintiffs and the Premier Executive and Premier 1K Class members, thereby making appropriate final injunctive relief and declaratory relief with respect to the Premier Executive and Premier 1K Classes as a whole.

37.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy.   The damages suffered by Plaintiffs and the other Premier Executive and Premier 1K Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against United, making it impracticable for Premier Executive and Premier 1K Class members to individually seek redress for United's wrongful conduct.   Litigating individual class members' claims would also produce a multiplicity of cases, congesting the judicial system, and creates the potential for inconsistent or contradictory judgments.   Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to the litigation of all claims arising from Defendants' misconduct.

### COUNT I – BREACH OF CONTRACT
### FOR PREMIER EXECUTIVE CLASS

38.     Plaintiffs Holli Hammarquist and Rich Fineman adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

39.     United made an offer to form a contract each time it represented that Mileage Plus members could become Premier Executive members by flying 50,000 qualifying miles in a given year and thereby receive the benefits of that level of status.   United's offer was capable of acceptance by performance.

40.     When Plaintiffs Holli Hammarquist and Rich Fineman and the other members of the Premier Executive Class flew the requisite 50,000 miles in 2011 to become Premier Executive members, they accepted United's offer and formed a contract, which was a valid, enforceable contract supported by consideration.

41.     Plaintiffs Holli Hammarquist and Rich Fineman and each of the other members of the Premier Executive Class have satisfied all conditions precedent pursuant to the Premier

Executive contract.

42.     United breached this contract by refusing to provide Plaintiffs Holli Hammarquist and Rich Fineman and the other members of the Premier Executive Class with the benefits of the Premier Executive level as described above.

43.     As a result of United's breaches, Plaintiffs Holli Hammarquist and Rich Fineman and each of the members of the Premier Executive Class have suffered damages.

### COUNT II – BREACH OF CONTRACT
### FOR PREMIER 1K CLASS

44.     Plaintiffs Brian Norton and Michael Kisiel adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

45.     United made an offer to form a contract each time it represented that Mileage Plus members could become Premier 1K members by flying 100,000 or more qualifying miles in a given year and thereby receive the benefits of that level of status.   United's offer was capable of acceptance by performance.

46.     When Plaintiffs Brian Norton and Michael Kisiel and the other members of the Premier 1K Class flew the requisite 100,000 miles to become Premier 1K members, they accepted United's offer and formed a contract, which was a valid, enforceable contract supported by consideration

47.     Plaintiffs Brian Norton and Michael Kisiel and each of the other members of the Premier 1K Class have satisfied all conditions precedent pursuant to the Premier 1K contract.

48.     United breached this contract by refusing to provide Plaintiffs Brian Norton and Michael Kisiel and the other members of the Premier 1K Class with the benefits of the Premier 1K level as described above.

49. As a result of United's breaches, Plaintiffs Brian Norton and Michael Kisiel and each of the members of the Premier 1K Class have suffered damages.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and on behalf of the Premier Executive and Premier 1K Classes, respectfully requests the following relief:

(a) Certification of the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b) Designation of Plaintiffs as the representatives of the Premier Executive and Premier 1K Classes, and appointment of undersigned counsel as class counsel;

(c) A declaration that Defendants' conduct alleged herein constituted a breach of contract;

(d) An award of damages against Defendants, jointly and severally, and in favor of Plaintiffs and the Premier Executive and Premier 1K Classes in an amount to be determined at trial resulting from Defendants' breach of contract;

(e) An award of reasonable attorneys' fees and all expenses and costs of this action;

(f) An award of pre-judgment and post-judgment interest; and

(g) Such other and further relief as this Court deems equitable, just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims in this Complaint.

Dated: February 27, 2013

Respectfully Submitted,

HOLLI HAMMARQUIST, RICH FINEMAN, BRIAN NORTON and MICHAEL KISIEL, individually and on behalf of all others similarly situated,

By:        /s/ Jacie C. Zolna
        One of the Attorneys for Plaintiffs
        and the Classes

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100
Facsimile: (312) 853-0279
***Attorneys for Plaintiffs and the Classes***